## BETTS v. THE PLANTER'S AND MERCHANT'S BANK OF HUNTSVILLE.

1. The statements of an agent, made subseqently to the contract, are not evidence against the principal; the agent must be examined as a witness.
2. A. received cotton of B., made an advance on it, and agreed to ship it to New Orleans or New York, and have it sold for the best price it would bring; A. to have the entire control of it, and proceeds to be applied to refund the advance. In New Orleans, when there, it would have produced enough to pay the debt; A. did not sell it there, but re-shipped it to New York, where it produced less; held that A. was not bound for the loss; having acted fairly.

THE President, Directors and Company of the Planter's and Merchant's Bank of Huntsville, brought an action of debt in the Circuit Court of Madison county, in April, 1826, against Charles Betts, to recover a balance remaining unpaid on a sealed note, made by him on the 20th of

JULY 1830.

'Betts
v.
The Planter's
and Mercht's.
B'k of Hunts-
ville.

February, 1822, for the sum of $4,477 40, payable to the plaintiffs, eight months after date. The defendant pleaded payment, and it was agreed that any special matter might be given in evidence. The cause was tried at May term, 1828, before Judge Gayle, when a verdict was found for the plaintiffs for $1,129 24, balance of the debt unpaid, and $362 82 damages for the detention, for which there was judgment for the plaintiffs.

By a bill of exceptions taken by Betts at the trial, it appears that the note was given for an amount of money advanced by the Bank to Betts, on the delivery by him to the Bank of 30,000 pounds of cotton. The Bank by their contract, undertook to ship the cotton to New Orleans or New York, at the risk and charges of Betts, and to have it sold for the highest price that could be obtained in cash; the cotton to be in the mean time, under the exclusive control of the Bank, and the proceeds to be applied to the payment of the note. It was proved that the Bank made similar advances to other persons the same season, on similar contracts. The cotton shipped by the Bank, was in part consigned to J. Mackey, and in part to B. Story, commission merchants in New Orleans; one Parker carried down the cotton of Betts to New Orleans, and delivered it to the consignee, either Mackey or Story, and received the freight of the one to whom he delivered, but did not recollect to which one that particluar lot was consigned, having carried cotton for the Bank to both. The cotton was not sold in New Orleans, but shipped to Bogert and Kneeland, of New York, and sold by them on the 11th November, 1822, at 10½ cents, that being the best price that could be obtained there; it weighed there 29,-731 pounds, and brought $3,121 76; the expenses were $1,015 12, and the nett amount $2,106 64, was credited on the note, as of the date of the sale in New York. On the 10th of May, 1824, Betts made a further payment of $1,100, which was also credited on the note. The Cashier of the Bank proved, that in the spring of 1825, he made a statement of the balance due on the note and interest, allowing the above credits, and presented it to Betts, and requested him to pay the half of the balance due as per statement, and informed him that if the half was paid, the plaintiffs would wait for the remainder till the 1st of January, 1826; that he made no objection, and promised to pay the amount required, but failed to do so. Cook, a witness, deposed that in May, 1822, in New Orleans, he

JULY 1830.

Betts
v.
The Planter's
and Mercht's.
B'k of Hunts-
ville.

sold some of his cotton for 13½ cents, which a short time before he could have obtained 14 cents for; that he could have obtained 13½ for the remainder, but refused that price, and shipped it to New York in hopes to do better, and that it neated him only about 7 cents.    Mastin, another witness, declined also having his cotton sold in New Orleans, and had it shipped to New York, expecting to obtain a better price; he had some sold there at 10½ and re-shipped some to Liverpool.    It appeared from the account sales of Bogert and Kneeland produced by the plaintiffs, that Mackey's account of expenses on the cotton of Betts, in New Orleans, amounting to $304 78, was paid by them out of the defendant's cotton.    The defendant proved by a witness, that his lot of cotton was of the first quality of cotton raised in that section of country.    He then offered one Williamson, a witness, to prove that in the spring of 1822, in New Orleans, Mackey admitted that he had the cotton of the defendant, that it was an excellent lot, and if offered alone, it would readily command the price he was required to ask for the whole consignment made to him by the Bank, 13½ or 14 cents; but that some of the other cotton was inferior, and would not bring the limit, even when classed with that of Betts; and as he could not get the limited price for the whole consignment, he would not offer or sell any.    To this evidence of Williamson, the Counsel for the Bank objected, and the objection was sustained by the Court, and this evidence rejected.

Betts, in this Court, assigns for error, the rejection of the evidence of Williamson.

a 2 Starkies
Ev. 42, 43.

HUTCHISON, for the plaintiff in error, argued that Mackey was the agent of the Bank, and that his acts and admissions were good evidence against the appellees; [a] that they are the acts and admissions of the principal.    He contended that the contract was one for re-imbursement, and that it was the duty of the Bank to avail itself of the first opportunity of full re-imbursement, and that if, after such opportunity was presented, the produce was put to further risk and hazard, when unnecessary to accomplish the object, it must be at the risk of the Bank.

HOPKINS, for the defendants in error.  No objection can be made because the Bank did not sell the cotton in New Orleans, for by the contract it is expressly provided

that the sale should be in New Orleans or New York, at the option of the Bank, and that they should have the exclusive control. An error in judgment is not sufficient to charge the appellees, without improper conduct on their part, though less was obtained in New York than could have been obtained in New Orleans. Large cotton owners acted in the same way for themselves that the Bank did, and the same results were produced; this shews fairness. The rule cannot be correct, that the Bank was bound to sell at the first opportunity; suppose the shipment of cotton to New York offered a prospect of profit; and that others had shipped and obtained good prices; and that the Bank, regarding alone its own interest, had sold in New Orleans, for a sum exactly sufficient to re-imburse itself, disregarding the probable advantages to Betts by a contrary course; would she not have been then more justly censurable? Again, the appellant has expressly assented to the correctness of the transaction; nearly two years after the sale, he paid $1,100 on the note, and in 1825, assented to the account stated, and promised to pay. As to the statements of Mackey, they were not evidence. As a general proposition, statements not on oath, are not evidence; true, an agent's statement of a contract is evidence, also his acts, but no other admissions of his, made after the contract, can be proved; he is a competent witness for either party, and should be sworn.[a] The answer of an agent in Chancery is not evidence against his principal.[b]

<div style="margin">JULY 1830.

Betts
v.
The Planter's and Mercht's. B'k of Huntsville.

a 2 Wheaton. R. 383.
b 10 Vesey Jr 126. 1 Phillips Evid. 77. 9 and note a.</div>

HUTCHISON, in conclusion. Fraud is not a necessary ingredient to constitute the liability. The cotton was delivered for the purpose of payment, and whenever that object could be accomplished, the contract should have been determined. The Bank mis-conceived and violated the contract, and the appellant is injured. Mackey's admissions are proper; his interest is identified with the Bank, and he is not a disinterested witness; he would be liable over to his principal for any abuse of authority.

By JUDGE WHITE. In support of the assignment of error, it is insisted, that the Bank took the cotton for the purpose of re-imbursing the advance made to Betts, with the power of selling, either at New Orleans or New York, and that as soon as it was practicable to sell for a sum which would discharge the amount lent, they were

JULY 1830.

Betts
v.
The Planter's
and Mercht's.
B'k of Hunts-
ville.

bound to do it, or abide the loss that might accrue from a subsequent depression of price. If this were admitted to be a correct position, the evidence rejected would then have been relevant and important, and if offered from a proper source, should have been received. Let us then inquire into the soundness of the principle assumed. To my mind it is by no means obvious, though the cotton were put under the direction of the Bank for the avowed purpose of refunding an advance made by them to Betts, that they were thereby necessarily bound to sell as soon as it would produce the amount lent. This indeed was the primary, but surely, not the only object of the arrangement; though to authorize the appropriation, it was necessary it should be expressed. The parties when they made it, no doubt had a view to the uncertainties and fluctuations of the market, and as it is a reasonable supposition that the Bank took cotton enough, at a medium calculation, to secure the money they advanced, the probabilities were as great that they would have something to refund, as that there would be a deficiency. If so, the Bank was required in common honesty to do more than merely secure their own funds, if the price at either one place or the other where they were allowed to sell, would demand such a course. Suppose the price had been, as contended, sufficient at New Orleans to pay the money advanced, but at New York, twenty-five per cent. greater, and the Bank had nevertheless sold at the former place, with a knowledge of the difference in the markets: would not Betts have been justified in saying they acted selfishly and regardless of his interest? Or suppose his cotton had been sold at New Orleans, and that of the other dealers similarly situated, taken on to New York, and sold for a much higher price; can we believe Betts would have rested satisfied, though the sum he had borrowed was paid; when perhaps he freighted cotton enough as he supposed, not only to answer that object, but to have, according to calculations then made, at least a small overplus: I think not, and if so, then he should not complain of any honest, though mistaken measure which the Bank took within the scope of their authority to secure themselves or benefit him. They had an interest in selling the property at least for a price that would enable them speedily to realize their own debt. They dealt with Betts as with other debtors in the same condition, by whose injury they themselves would be prejudiced, and by whose success in that transaction at all

events they would profit; then they had no motive wilfully to err, and if they mistook the future state of the market, it was a matter about which they and others might well, and really did mistake. For the evidence shows that individuals having the management of their own property, did in the same season, and under the same prospects, make the same mistake. Then the proof rejected, if admitted, would have established nothing essential to the ends of justice. But conceding its importance, the manner in which it was offered demanded its rejection. The attempt was to prove by Williamson, what Mackey had said about the price of cotton at a particular time and place, the quality of Betts' lot, and the sum it would have commanded, &c. Taking Mackey to be the agent of the Bank, it does not follow that his admissions are evidence against them. What an agent says or does, within his authority, in making a contract for his principal, or as an immediate inducement to a contract at the time it is made, constitutes a part of the *res gesta*, and is evidence of that contract against the principal. But his subsequent statements or admissions *in pais*, and his answer in Chancery, are not evidence against his principal. If acquainted with such facts, he is competent to prove them, and should be produced to state them as other witnesses, upon oath. *a* We are then of opinion that there was no error in rejecting the testimony as offered below, and therefore, the judgment must be affirmed.

*In the margin:* JULY 1830. Betts *v.* The Planter's and Mercht's. B'k of Huntsville.

*a* 2 Wheaton 383. 10 Ves. Jun. 126—7. 1 Phil. 77, 79.

Judgment affirmed.